## THOMAS MASKELL *v.* JOHN MERRIMAN.

A purchaser of property subject to a mortgage, in possession, is entitled to the rights and privileges of a third possessor, though a judgment had been obtained by the mortgagee against the mortgagor, but no execution had issued before the purchaser took possession under the sale ; it is only where the mortgage contains the pact *de non alienando,* that the third possessor is not entitled to notice. Though the sale were al-

leged to be fraudulent, a creditor of the mortgagor could not disregard it, and levy an execution, without resorting to a revocatory action.

A third possessor of property subject to a judicial mortgage, has not only a right to require regular notice, but to demand the previous discussion of other mortgaged property yet in possession of the debtor.   C. P. 71

One who sets up title under a forced alienation, must show a compliance with the formalities of law.   It is generally sufficient to show a judgment, execution, and sheriff's deed, to induce the presumption *omnia recte acta;* but this relates to cases in which the proceedings are against the owner himself.

APPEAL from the District Court of St Mary, *King*, J.

*Maskell*, appellant, *pro se.*   *T. H.* and *W. B. Lewis*, on the same side.

*Splane*, for the defendant.

BULLARD. J.   This case is intimately connected with that of *Merriman* v. *Kemper*, just decided.   It relates to the proceedings of H. R. Lee & Co., and of Clark, Weyman & Co. against the property sold by Kemper to the defendant, and in his possession, and presents the question, whether the title of Merriman was legally divested by those proceedings, and the land became the property of Maskell, as he alleges in the present action.

The sale from Kemper to Merriman was by authentic act, duly recorded in the office of the parish judge.   It was followed by actual possession, on the 1st of January, 1842.   In the act, as we have already seen, the mortgage in favor of John M. Kemper is recited, with an express stipulation, on the part of the vendor, that it should be paid out of the first instalment of the price.   In point of fact the mortgage had already been transferred to Henry R. Lee & Co., and they had recovered judgment upon it against Kemper, the vendor, and other parties to it; but the record does not show that Merriman had any notice, or knowledge that such a judgment had been rendered.   The *fieri facias* was taken out, levied upon the land in possession of Merriman, it was appraised without his assent, and the whole proceeding carried on without any notice to him, and as if the property had still belonged to Kemper and remained in his possession. The question then is, whether Merriman was entitled to the rights and privileges of a third possessor—to the notice required by the Code to third possessors in ordinary cases; or whether the

mere fact, that a judgment had been rendered against the mortgagor, although no execution was issued until the 15th of November, 1842, more than ten months after the defendant took possession, can deprive him of such privileges.

The Code certainly recognises the validity of the sale of mortgaged property, by defining the rights of third possessors, and regulating the manner of proceeding when the mortgaged property has been alienated. There is one exception to the general rule, and we are aware of none other, when the alienation is not fraudulent and collusive, or simulated, and that is, where the original mortgagor has, in the act of mortgage, entered into the pact *de non alienando*. In such a case, as we have ruled on numerous occasions, the third possessor is not entitled to any notice, and, indeed, is not regarded as a third possessor at all, But even if the sale by Kemper to Merriman had been alleged to be fraudulent, a creditor of Kemper could not disregard the sale altogether, and levy an execution at once, without resorting to the revocatory action.

The case is still stronger as it relates to Clark, Weyman & Co., who had no conventional mortgage, but only a general judicial one, resulting from the recording of their judgment recovered against Kemper previously to the sale. In such a case the third possessor of a part of the mortgaged property has not only a right to be regularly notified, but to require the previous discussion of other mortgaged property yet in possession of the debtor. Code of Practice, art. 71.

With this view of the law and of the rights of the parties, if the plaintiff, instead of bringing this action, had taken out a monition, and Merriman, in opposition, had set up the same nullities in the proceedings which he has alleged in his answer to this case, we should have thought ourselves compelled to declare his sale void as to Merriman, because the formalities and previous notices required by law in the hypothecary action, were not complied with or given. No previous demand of Kemper, the debtor, and no notice to the third possessor, thirty days after such demand, have been shown, and it is not pretended that Merriman was personally bound for the debt. He who sets up title under a forced alienation, must show a compliance with the

formalities of law.   It is true that it is, in general, sufficient to show a judgment, execution, sheriff's deed, and that the presumption is then *omnia recte acta*;  but this relates to cases where the proceedings were against the owner himself.   But in the present case the rights of the defendant, as a *bona fide* purchaser in possession, were disregarded, and, in our opinion, the plaintiff acquired no title by the sheriff's sale.

<div align="right">

*Judgment affirmed.*